UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DEBORAH A. PUCHAKJIAN, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 09-1326-NLH-JS |
| | : | |
| v. | : | **OPINION** |
| | : | |
| TOWNSHIP OF WINSLOW, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**APPEARANCES**:

THOMAS MATTHEW BARRON
BARRON & POSTERNOCK, LLP
400 N. CHURCH STREET
SUITE 250
MOORESTOWN, NJ 08057
*Attorney for Plaintiff Deborah A. Puchakjian*

PATRICK J. MADDEN
MADDEN & MADDEN, PA
108 KINGS HIGHWAY EAST
SUITE 200
PO BOX 210
HADDONFIELD, NJ 08033-0389
*Attorney for Defendant Township of Winslow*

**HILLMAN, District Judge**

Plaintiff, Deborah A. Puchakjian, alleges Defendant Township of Winslow (hereinafter "Defendant" or "Township") discriminated against her on the basis of gender because it compensated her significantly less than it compensated her male predecessor and male counterparts who performed substantially equal or similar work. Defendant denies these claims and moves for summary judgment [Doc. 28]. In response, Plaintiff filed a cross-motion

for summary judgment [Doc. 34].  For the reasons expressed below, the Court will grant Defendant's Motion and deny Plaintiff's Cross-Motion.

I.   **JURISDICTION**

Plaintiff has alleged a violation of the Equal Pay Act, 29 U.S.C. § 206 et seq., as well as several violations of New Jersey state law.  The Court has jurisdiction over Plaintiff's Equal Pay Act claim pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

II.  **BACKGROUND**

Plaintiff commenced her employment with Defendant in 1980.  After working for the Township in several different capacities, she was appointed, on February 1, 2002, as the Municipal Clerk, and received a starting salary of $55,000.00.[1]  Prior to her appointment, Ronald C. Nunnenkamp (hereinafter "Mr. Nunnenkamp") served as the Township's Municipal Clerk, a position he occupied from 1973 until his retirement in 2002.  In addition to serving as the Municipal Clerk, in 1986, Mr. Nunnenkamp became the

---

[1]  In 2004, the Township retroactively increased Plaintiff's 2003 salary by 14.5% to $63,000.00.  None of the male department heads received an equivalent raise.  Defendant increased Plaintiff's salary, and the salaries of the other female department heads, because it recognized that a significant gap in compensation existed between "traditional male positions of employment and female positions of employment."  Doc. 28, Exhibit 24.

2

Township's part-time Business Administrator.  Consequently, at the time of his retirement, he earned approximately $85,515.00 for his work as Municipal Clerk, and approximately $13,435.00 for serving as the Business Administrator.[2]

The Township administration is divided into ten departments, and each department is managed by a department head.  The Municipal Clerk is one of these several supervisory positions. Three departments are headed by females and the remaining seven by men.[3]  There is no dispute that all male department heads earn more than Plaintiff and the two other female department heads. Although the responsibilities of each department head differ, Plaintiff views the seven male department heads as comparable to her position, Municipal Clerk.[4]

---

[2]  This position remained part-time until 2002, when the Township decided to reorganize and consolidate several positions. As part of its reorganization, Defendant severed the part-time Business Administrator and Municipal Clerk positions, eliminated the job of Office Service Manager and changed the Business Administrator part-time position into the full-time position of Township Administrator.

[3]  Men occupy the positions of Township Administrator, Chief Financial Officer, Sewer Superintendent/Water Superintendent, Chief of Police, Construction Official, Municipal Assessor and Director of Public Works.

[4]  As discussed in greater detail below, the role, responsibilities and requirements of each department head vary significantly.  Not only do some of the department heads perform substantially different tasks, but also the skills and educational requirements for each position are dissimilar.

3

On March 24, 2009, Plaintiff filed her Complaint in this case alleging counts for discrimination on the basis of unequal pay, failure to pay overtime and retaliation.  Defendant moves for summary judgment on Plaintiff's claims.  Plaintiff also moves for summary judgment with respect to Counts I, II and III of her Complaint.

**III.** **DISCUSSION**

    **A.    Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to

4

be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d

241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating

the absence of a genuine issue of material fact. Celotex Corp.,

477 U.S. at 323.  Once the moving party has met this burden, the

nonmoving party must identify, by affidavits or otherwise,

specific facts showing that there is a genuine issue for trial.

Id.  Thus, to withstand a properly supported motion for summary

judgment, the nonmoving party must identify specific facts and

affirmative evidence that contradict those offered by the moving

party. Anderson, 477 U.S. at 256-57.  A party opposing summary

judgment must do more than just rest upon mere allegations,

general denials, or vague statements. Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Cir. 2001).

### B.   Equal Pay Act[5]

The Equal Pay Act (hereinafter "EPA") provides, in pertinent

part, that:

> No employer . . . shall discriminate . . . between
> employees on the basis of sex by paying wages to
> employees . . . at a rate less than the rate at which
> he pays wages to employees of the opposite sex . . .

---

[5]  In Count 2 of her Complaint, Plaintiff alleges a
violation of the New Jersey Equal Pay Act (hereinafter "NJEPA").
This District has recognized the symmetry between discrimination
claims under the Equal Pay Act and the NJEPA.  Therefore, the
Court will analyze the claims similarly. *See e.g.,* Dubowsky v.
Stern, Lavinthal, Norgaard & Daly, 922 F.Supp. 985, 996 (D.N.J.
1996) (applying the analysis of an Equal Pay Act claim to a NJEPA
claim).

> for equal work on jobs the performance of which
> requires equal skill, effort, and responsibility, and
> which are performed under similar working conditions,
> except where such payment is made pursuant to (i) a
> seniority system; (ii) a merit system; (iii) a system
> which measures earnings by quantity or quality of
> production; or (iv) a differential based on any other
> factor other than sex . . .

29 U.S.C. § 206(d). Claims based upon the EPA "follow a two-step burden-shifting paradigm." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). First, a plaintiff must prove a *prima facie* case of discrimination. Then, once a *prima facie* case is established, the defendant has the burden to demonstrate the applicability of one of the statute's four affirmative defenses. Id. If the defendant unequivocally establishes an affirmative defense, the plaintiff must prove that the nondiscriminatory justification was merely a pretext for discrimination. Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F.Supp. 985, 990 (D.N.J. 1996) (citing E.E.O.C. v. State of Del. Dept. of Health and Social Servs., 865 F.2d 1408, 1414 n.8 (3d Cir. 1989).

To establish a *prima facie* case of discrimination, a plaintiff must show that employees of opposite genders were paid unequally for "'equal work' - work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale, 200 F.3d at 107; Del. Dept. of Health and Social Servs., 865 F.2d at 1414. This inquiry, however, does not focus on "the name under which the position was classified" or on its job description. Rather, a plaintiff must prove his case through

6

the "actual job content" and what "was actually done." <u>Brobst v.
Columbus Servs. Intern.</u>, 761 F.2d 148, 155 (3d Cir. 1985).  Thus,
"[t]he crucial finding on the equal work issue is whether the
jobs to be compared have a common core of tasks, i.e., whether a
significant portion of the two jobs is identical." <u>Id.</u> at 156;
<u>see</u> <u>Shultz v. Wheaton Glass Co.</u>, 421 F.2d 259, 265 n. 10 (3d Cir.
1970) (noting that this test does not require that the two jobs
be entirely identical, only that the "different tasks which are
only incidental and occasional would not justify a wage
differential").  "Factors to be considered in determining whether
tasks are similar include whether they require similar quality
and quantity of production, education, relevant prior work
experience, conduct and skill." <u>Dubowsky</u>, 922 F.Supp. at 990
(citing 29 C.F.R. § 1620.13).

If a court determines that the jobs share a common core of
tasks, "[t]he inquiry then turns to whether the differing or
additional tasks make the work substantially different." <u>Brobst</u>,
761 F.2d at 156; <u>see</u> <u>Merillat v. Metal Spinners, Inc.</u>, 470 F.3d
685, 695 (7th Cir. 2006) ("Once a plaintiff establishes a common
core of tasks, we ask whether any additional tasks make the jobs
substantially different") (internal quotations omitted).  To
resolve this issue, courts should only consider the
qualifications and skills necessary to perform the job, not the
specific qualifications of the employees who occupy the

7

positions. Cox v. Office of Attorney Ethics of the Supreme Court of New Jersey, No. 05-1608, 2006 WL 3833470, at * 6 (D.N.J. Dec. 29, 2006); *see* Hodgkins v. Kontes Chemistry & Life Scis. Prod., No. 98-2783, 2000 WL 246422, at * 15 (D.N.J. Mar. 6, 2000) (noting that the "comparative skill or quality of work" among the workers is irrelevant).  In other words, at this stage of the analysis, the focus of the inquiry is on the job, not on a comparison of the individual abilities of the employees. Ultimately, a finding that jobs entail equal work must be decided on a case-by-case basis. Brobst, 761 F.2d at 156; Heller v. Elizabeth Forward Sch. Dist., 182 F.App'x. 91, 95 (3d Cir. 2006) ("Moreover, because of the heavily fact-driven character of the inquiry, substantial equality must be determined on a case-by-case basis").

Once a plaintiff establishes her *prima facie* case, "[t]he burden of *persuasion* then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act." Stanziale, 200 F.3d at 107 (citing Del. Dept. of Health and Social Servs., 865 F.2d at 1414 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974))); *see* Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh, No. 10-3533, 2011 WL 1447766, at * 3 (3d Cir. 2011) ("If the plaintiff can establish a prima facie case, the employer may prevail by establishing that the disparity in pay is due to a

differential based on a . . . factor other than sex") (internal quotations omitted).  Thus, an employee is exempt from liability under the EPA if the differential payments were "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).  "Acceptable factors other than sex include education, experience, prior salary, or any other factor related to performance of the job." Dubowsky, 922 F.Supp. at 990.  At this stage of the inquiry, the Court may now compare the abilities and qualifications of the particular employees who filled the jobs. Id. at 990; Hodgkins, 2000 WL 246422 at * 15.

The Third Circuit has specifically opined that the employers' burden in establishing an affirmative defense is exceptionally heightened. Stanziale, 200 F.3d at 107-08.  "[T]he employer must prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" Id. at 107 (quoting in part Del. Dept. of Health and Social Servs., 865 F.2d at 1414).  Consequently, in an EPA claim, "an employer must submit evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the wage disparity." Id. at 108.  In other words, evidence that merely "could explain the wage disparity" is insufficient, rather "the proffered reasons" must "explain the wage disparity." Id. at 107-

08.

## 1.  Plaintiff's EPA claim with Respect to Her Predecessor

Plaintiff contends she was paid less than her predecessor, Mr. Nunnenkamp, for substantially equal work.  In response, Defendant opines that their work was not substantially equal and, even if it was, reasons other than gender accounted for the disparity in pay.

### a. *Prima Facie* Case

Plaintiff submitted sufficient evidence to establish a *prima facie* case of unequal pay based upon gender.  In her affidavit and deposition testimony, Plaintiff detailed the common core of tasks shared between herself and Mr. Nunnenkamp.[6]  Defendant seemingly concedes the similarity between their tasks, but claims Mr. Nunnenkamp's higher salary was justified because he performed additional duties.  In addition to serving as the Municipal Clerk, he was also the Township's part-time Business Administrator, and, according to Defendant, this added responsibility made Mr. Nunnenkamp's job substantially different, thus accounting for the compensation difference.[7]

---

[6]  The duties of municipal clerks are statutorily mandated and defined.  Consequently, there is little room for a township to alter or amend a municipal clerk's responsibilities. *See* N.J.S.A. 40A:9-133(e) (stating that "[t]he municipal clerk shall . . .").

[7]  Shortly before Plaintiff's appointment, the Township severed the part-time Business Administrator and Municipal Clerk

The Court, however, finds it difficult to accept this characterization of Mr. Nunnenkamp's employment responsibilities. Although he performed additional tasks as Business Administrator, Mr. Nunnenkamp was separately compensated for that position.[8] Since both his compensation and work as Business Administrator were distinct from his duties as Municipal Clerk, the Court cannot conclude that the extra tasks Mr. Nunnenkamp performed as Business Administrator constituted additional tasks that made his work as Municipal Clerk substantially different from Plaintiff's work as Municipal Clerk.

Recognizing this deficiency in their argument, Defendant postulates that the Township artificially inflated Mr. Nunnenkamp's Municipal Clerk salary in order to provide him with additional compensation for his duties as Business Administrator. In support of this contention Defendant relies upon the deposition testimony of Sue Ann Metzner (hereinafter "Ms. Metzner"), the Township's Mayor, and Mr. Nunnenkamp.  Both individuals testified that Mr. Nunnenkamp's Municipal Clerk salary reflected compensation for the added tasks and

-------

positions.

[8] The Township's salary ordinances clearly indicate Mr. Nunnenkamp received a salary for both the Municipal Clerk and Business Administrator positions.  Furthermore, Defendant does not dispute that Mr. Nunnenkamp received compensation for both positions.

responsibilities he performed as Business Administrator.[9]  The
evidence in the record, however, does not support this
conclusion.

According to Defendant's records, Mr. Nunnenkamp received
yearly raises between approximately $2,500.00 and $3,500.00.
These raises, however, were not in recognition for work as
Business Administrator.  Rather, they were required by state
statute.  New Jersey law, N.J.S.A. 40A:9-165, mandates that
municipal clerks shall receive the same increases in salary
"given to all other municipal officers and employees." N.J.S.A.
40A:9-165.  Thus, whenever Defendant raised another employee's
salary by a particular percent, it was required, absent good
cause, to raise equivalently Mr. Nunnenkamp's Municipal Clerk
salary.  Consequently, Mr. Nunnenkamp's raises were not

---

[9]  Ms. Metzner specifically stated that she thought Mr.
Nunnenkamp's high salary was "really more" of a reimbursement for
his work as Business Administrator because "you don't
administrate towns even tiny towns let alone a big town like this
for $13,435.00." Doc. 28, Exhibit 4, Dep. Tr. 126-27.  She
further expressed her belief that his salary was not really a
"clerk's salary.  It was more am administrator's salary." Id.
Ms. Metzner and Mr. Nunnenkamp believed that the raises were
directed into Mr. Nunnenkamp's Municipal Clerk salary because he
had tenure as Municipal Clerk.  The Township's documents reveal
that the position of Municipal Clerk is afforded tenure, while
the Business Administrator serves at the pleasure of the
Township's counsel.  Consequently, Mr. Nunnenkamp's Municipal
Clerk salary was, more or less, guaranteed, but his salary of
Business Administer was not.  Therefore, it was advantageous for
all salary increases, including those for his duties as Business
Administrator, to be reflected in his salary as Municipal Clerk
because if his services as Business Administrator terminated, he
would still have continued to receive a higher salary.

reflective of his increased responsibilities as Business Administrator.  The annual increases occurred because of state law.  The Court, therefore, concludes Plaintiff established a *prima facie* case of unequal pay because Mr. Nunnenkamp and Plaintiff performed substantially equal work as Municipal Clerk, and Mr. Nunnenkamp's responsibilities as Business Administrator were not additional tasks that made his work substantially different.

### b. Affirmative Defenses

After a plaintiff establishes a *prima facie* case of unequal pay, the defendant may avoid liability if it demonstrates the applicability of one of the statute's affirmative defenses. Stanziale, 200 F.3d at 107.  Presently, Defendant claims that any difference in pay between Plaintiff and Mr. Nunnenkamp was based upon factors other than Plaintiff's gender.  According to Defendant, Mr. Nunnenkamp received a higher salary because of his approximate thirty-year tenure as Municipal Clerk.  From his appointment in 1972 until his retirement in 2002, Mr. Nunnenkamp received yearly raises between approximately $2,500.00 and $3,500.00.  Plaintiff argues, in response, that because these raises were not the result of a bonafide seniority or longevity payment system, Defendant cannot utilize seniority or length of tenure as justification for the wage disparity.  The Court, however, does not agree with this interpretation of the EPA.

Neither the statute's language nor case law require a defendant to officially implement a seniority or longevity payment system as a prerequisite to asserting seniority as an affirmative defense to an EPA claim.[10]  Consequently, Defendant's lack of a seniority or longevity payment system will not bar it from asserting a seniority or length of tenure based affirmative defense.

After a thorough review of the record, the Court concludes that Mr. Nunnenkamp's raises were not the result of gender discrimination, but rather were reflective of his long tenure as Municipal Clerk.[11]  As discussed above, New Jersey law mandates that municipal clerks receive the same increases in salary "given to all other municipal officers and employees." N.J.S.A. 40A:9-165.  Thus, whenever a municipal employee received a raise,

---

[10]  Plaintiff fails to cite any cases in support of her interpretation of the EPA.

[11]  Both the statute and numerous Courts have recognized that seniority may serve as an affirmative defense to an EPA claim. *See e.g.*, <u>Markel v. Bd. of Regents of Univ. of Wis. Sys.</u>, 276 F.3d 906, 913 (7th Cir. 2002)(noting that an employer may use length of service as justification for paying an employee a higher salary); <u>Hutchins v. Int'l Bhd. of Teamsters</u>, 177 F.3d 1076, 1082 (8th Cir. 1999) ("Length of service is a factor other than sex upon which an employer may base decisions regarding pay increases"); <u>Allen v. Sulzer Chemtech USA, Inc.</u>, 289 F.App'x. 278, 281 (10th Cir. 2008) ("Because seniority is a valid basis for a salary variance, the district court correctly granted summary judgment on this claim"); <u>E.E.O.C. v. Affiliated Foods, Inc.</u>, No. 81-6066, 1984 WL 980, at * 16 n.6 (W.D. MO. April 5, 1984) ("Courts have approved of legitimate seniority systems even when they were informally administered and de facto").

14

Mr. Nunnenkamp's Municipal Clerk salary, absent good cause, had to proportionally increase.  Over the course of his thirty-year tenure with Defendant, Mr. Nunnenkamp received yearly salary increases because other employees of the Township received raises.[12]  These mandatory raises explain any compensation disparity.  The Court, therefore, finds that if a reasonable factfinder reviewed this evidence, it would conclude that Mr. Nunnenkamp's length of tenure as Municipal Clerk both explained and motivated the wage disparity.[13]

After a defendant successfully raises an affirmative defense, the plaintiff must provide evidence that the defendant's explanations were pretextual.  Presently, Plaintiff failed to provide such evidence.  Therefore, summary judgment will be entered in favor of Defendant with respect to this claim.[14]

---

[12]  The salary ordinances on the record clearly reflect that Mr. Nunnenkamp's yearly raises were proportional to the yearly raises other Township employees received.

[13]  The Court additionally notes that Mr. Nunnenkamp's thirty years of experience as Municipal Clerk provided further justification for his salary. See e.g., Gaujacq v. EDF, Inc., 601 F.3d 565, 575 (D.C. Cir. 2010) (holding that a male employee's receipt of salary higher than a comparable female's did not violate the EPA when the salary was justified upon the employee's greater experience); Balmer v. HCA, Inc., 423 F.3d 606, 612 (6th Cir. 2005) ("A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act."); Knadler v. Furth, 253 F.App'x. 661, 664 (9th Cir. 2007) (holding similarly).

[14]  The Court notes that adopting Plaintiff's argument would lead to an absurd result.  According to Plaintiff, she is entitled to the salary Mr. Nunnenkamp received when he retired,

### 2.   Plaintiff's EPA Claim with Respect to the Male Department Heads

Plaintiff also asserts that her compensation as Municipal Clerk was less than that received by the male department heads[15] who performed substantially equal work.[16]   In response, Defendant opines that the work of the other department heads was not substantially equal.

### a. *Prima Facie* Case

To establish a *prima facie* case of discrimination, a plaintiff need only prove that because of her gender she received less pay than a male employee who performed substantially equal work. <u>Dubowsky</u>, 922 F.Supp. at 990.   Presently, Plaintiff fails to establish a *prima facie* case of unequal pay.   In particular,

---

$80,515.00.   If Plaintiff received that salary at the commencement of her employment as Municipal Clerk, and retired after twenty years in that position, her salary, in 2022, would be $172,968.00.   Then, applying Plaintiff's logic, her successor would be appointed with a starting salary of $172,968.00.   Such a salary scheme not only defies logic, but also would surely amount to a substantial financial hardship on Defendant.   The Court additionally notes that Plaintiff's compensation was comparable to the salaries of other municipal clerks in New Jersey, information considered by the Township when it established her salary.

[15]   The Municipal Clerk is one of ten department head positions in the Township.   Out of the ten positions, men currently occupy seven: Township Administrator, Chief Financial Officer, Sewer Superintendent/Water Superintendent, Chief of Police, Construction Official, Municipal Assessor and Director of Public Works.   Plaintiff views all seven department head positions as comparable to her job.

[16]   There is no dispute that all male department heads earned more than Plaintiff.

16

she did not provide any evidence on how her job is substantially equal to those of the other department heads.  During her deposition, Plaintiff admitted that her responsibilities as Municipal Clerk were neither similar or equal to the responsibilities of the other department heads.  She further testified that the only similarity between her job and the male department heads was supervision of employees.  Supervision of employees and a title of department head, however, are not sufficient to render positions substantially equal. *See* Wheatley v. Wicomico Cnty., Md., 390 F.3d 328, 332 (4th Cir. 2004)  ("To support their theory, the women relied on evidence that all managers-regardless of department subject matter-ultimately perform the same supervisory duties.  They all, for instance, prepare budgets, monitor employees, and conduct meetings.  We decline to accept the argument . . . that employees with the same titles and only the most general similar responsibilities must be considered 'equal' under the EPA.  In actuality, plaintiffs present a classic example of how one can have the same title and the same general duties as another employee, and still not meet two textual touchstones of the EPA-equal skills and equal responsibility"); *see also* Lemke v. Int'l Total Servs., Inc., 56 F. Supp.2d 472, 490 (D.N.J. 1999) (noting that although all persons at issue were "district managers . . . the inquiry [of whether the EPA was violated] centers around actual job content

17

as opposed to job titles or descriptions"). Courts have found these types of admissions as sufficient evidence that compared jobs are not substantially equal. *See* Hesley v. City of Somers Point, No. L-625-03, 2006 WL 2482839, at * 7 (N.J. Super. Ct. App. Div. Aug. 30, 2006) (holding that the plaintiff, a female department head, failed to produce sufficient evidence of a wage discrimination claim "based upon wage differentials between male and female department heads under . . . the classic EPA approach" when she conceded that her duties were not similar to the duties performed by the male department head). The Court will, therefore, enter summary judgment in favor of Defendant with respect to this claim.[17]

---

[17] In support of its decision to enter summary judgment in favor of Defendant, the Court also relies upon its analysis in part C(2)(a) of this Opinion. In that section the Court differentiates the Municipal Clerk from each male department head, and concludes that Plaintiff's work was not similar to any of their work. As discussed in greater detail in footnote nineteen, if a plaintiff fails to establish a *prima facie* case of discrimination under the New Jersey Law Against Discrimination (hereinafter "NJLAD"), then her EPA claim also fails because the burden to prove a *prima facie* case under the NJLAD is substantially less onerous then the burden to prove a *prima facie* case under the EPA. Consequently, since the Court concluded below that Plaintiff could not establish that her work was similar to the work of the male department heads, neither can she meet the more demanding standard for a *prima facie* case under the EPA and prove that her job was substantially equal to the male department heads' positions. *See* Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 909 (N.J. 1990) ("It is generally acknowledged that Title VII, with its broader approach to discrimination, requires a less-exacting degree of job similarity than is necessary to bring an EPA action. . . . The Supreme Court has observed that under Title VII, the burden of proving a *prima facie* case is not onerous. . . . In contrast, under the EPA, a

###### C.    New Jersey Law Against Discrimination

In Count III of her Complaint Plaintiff alleges Defendant violated the New Jersey Law Against Discrimination (hereinafter "NJLAD") because, for equal work, it paid her less than Mr. Nunnenkamp, her predecessor, and the male department heads.  A plaintiff establishes a *prima facie* case of discrimination in the form of unequal wages when she (1) proves a claim under the EPA or (2) can demonstrate that her work is similar under Title VII standards.[18] Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 913 (N.J. 1990).  Under the Title VII analysis, a plaintiff must first demonstrate that her work was "similar" to a comparable employee's work.  Once the similarity between the jobs is established, the burden of production shifts to the defendant, and he must "articulate a legitimate non-discriminatory reason for the treatment of the plaintiff." Id.  Unlike EPA claims, "the ultimate burden of persuasion shall remain on the plaintiff."[19]

---

claimant must meet a more exacting *prima facie* case standard") (internal citations and quotations omitted).

[18]  Otherwise known as the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) framework.

[19]  The Court pauses to reiterate the distinctions between the analysis of a claim for unequal wages under the EPA and NJLAD.  To establish a *prima facie* case of discrimination under the EPA, a plaintiff must prove that employees of opposite genders were paid unequally for substantially equal work.  Once the *prima facie* case is established, the burden of persuasion shifts to the defendant who must prove an affirmative defense "so clearly that no rational jury could find to the contrary." Stanziale, 200 F.3d at 107 (internal quotations omitted).  This

Id.

In the present matter, the Court already concluded Plaintiff failed to establish an EPA claim.  Therefore, we will only apply the second part of the NJLAD analysis.

### 1.  Plaintiff's NJLAD claim with Respect to Her Predecessor

As discussed above, the Court concluded Defendant successfully established an affirmative defense to Plaintiff's EPA claim.  Consequently, this determination renders any further analysis of Plaintiff's NJLAD claim moot.[20]  The Court, therefore, will enter summary judgment in favor of Defendant.

---

heightened standard requires that defendant's affirmative defense "explain the wage disparity." Id. at 107-08.  On the other hand, to establish a *prima facie* case under the NJLAD, a plaintiff need only prove that her work is similar to an employee of the opposite gender's work.  This is a significantly lesser burden than the EPA requires. Grigoletti, 570 A.2d at 909.  However, in turn, defendant's burden to establish an affirmative defense is also lowered. Id. at 910 ("Thus, 'the Equal Pay Act standard which requires an employer to rebut a *prima facie* case of compensation discrimination with a preponderance of the evidence, differs substantially from the evidentiary burden a defendant must shoulder in a Title VII case") (quoting Schulte v. Wilson Indus., 547 F.Supp. 324 (D. Tex. 1982)).  The burden of production, as opposed to the burden of persuasion, shifts to the employer, and it need only "articulate a legitimate reason for the apparent discriminatory treatment" of Plaintiff. Id.

[20]    As delineated in greater detail in footnote nineteen, if a defendant establishes an affirmative defense under the EPA, the plaintiff's NJLAD claim also fails because the burden to prove a defense to a NJLAD claim is lower than the burden of proving a defense to an EPA claim.

### 2.  Plaintiff's NJLAD Claim with Respect to the Male Department Heads

Similar to her claim under the EPA, Plaintiff also contends that her compensation as Municipal Clerk was less than that received by the male department heads who performed similar work. In support of this claim, she specifically views the Construction Official and Municipal Assessor as positions similar to the Municipal Clerk.[21]

---

[21]  In early 2004, the Township Administrator analyzed the levels of compensation paid to department heads in the Township. As part of this review, he created a salary matrix based upon a variation of the Hay Point System, a point factoring system that calculates an employees' compensation through the assignment of points based upon skills and qualifications valued to the employer.  The more points assigned to a particular position, the higher the compensation for that position. *See* Lord v. Pa. Nat'l. Mut. Cas. Ins. Co., No. 07-1229, 2009 WL 2242364, at * 2 (M.D. Pa. July 23, 2009) ("The Hay Point System calculates an employee's salary using several variables, including the employee's job description"); Engelmann v. Nat'l Broad. Co., Inc., No. 94-5616, 1996 WL 76107, at * 8 (S.D.N.Y. Feb. 22, 1996) ("The Hay management system uses surveys and industry-wide salary data, as the basis for recommended rate ranges, and minimum, maximum and midpoint salaries for specific positions"). Consequently, jobs assigned an equal number of points should receive the same level of compensation.  Although Defendants never implemented this system or adopted the matrix, Plaintiff, nonetheless, relies upon it and claims it evidences the disparity in pay between female and male department heads.

The matrix created by the Township Administrator recognized eleven grades, and each position in the Township was assigned a grade.  Under this system, the Municipal Clerk, Municipal Assessor and Construction Official all received the same grade, ten.  According to Plaintiff, since the Construction Official and Municipal Assessor were assigned the same grade as the Municipal Clerk, the positions are similar and should all receive the same amount of compensation.  Although Plaintiff relies upon this matrix as *prima facie* evidence of job similarity, the Township Administrator's unused point system does not alter the Court's own analysis of the similarity among the positions after applying

### a. Prima Facie case

To establish a *prima facie* case of discrimination based upon unequal pay, a plaintiff need only prove that because of her gender she received less compensation than a male employee who performed similar work. <u>Grigoletti</u>, 570 A.2d at 913.  Presently, Plaintiff fails to establish her *prima facie* case.[22]  The responsibilities of the Municipal Clerk are not similar to the duties of the Township Administrator, Chief Financial Officer, Director of Public Works, Chief of Police and Sewer/Water Superintendent.[23]  Neither is her work similar to the work of the

---

the appropriate legal standard.

[22]  In support of her claim, Plaintiff relies upon several statements made in 2004 by various Township officials concerning a disparity in pay among male and female department heads.  We pause to note that these statements are not relevant to the Court's analysis because they do not provide any insight into whether the position of Municipal Clerk is similar to the other department head positions.  As already discussed in great detail, to establish a *prima facie* case under the NJLAD, a Plaintiff must prove job similarity, not merely a perceived disparity in compensation.  Furthermore, even if the disparity statements were somehow relevant, they occurred in 2004, and were made in reference to Plaintiff's $55,000.00, not $63,000.00 salary.  Additionally, they were also made as justification to raise her compensation by approximately $8,880.00.

[23]  With respect to the other male department heads, Plaintiff cannot argue that her responsibilities as Municipal Clerk are similar to their duties.  First, the positions of Township Administrator, Chief Financial Officer and Director of Public Works are not similar to the Municipal Clerk because the former all require advanced degrees, while the latter does not.  *See e.g.*, <u>Soble v. Univ. of Md.</u>, 778 F.2d 164, 167 (4th Cir. 1985) (noting that differences in academic degrees render positions unequal for comparison under the EPA).  With respect to the Chief of Police and Sewer/Water Superintendent, these

Construction Official and Municipal Assessor.[24]  As already
discussed above, Plaintiff admitted during her deposition that
her responsibilities as Municipal Clerk were neither similar or
equal to the responsibilities of the other department heads. *See*
Hesley, 2006 WL 2482839 at * 7 (holding that the plaintiff, a
female department head, failed to produce sufficient evidence of
a wage discrimination claim "based upon wage differentials
between male and female department heads under . . . the
McDonnell Douglas approach" when she conceded that her duties
were not similar to the duties performed by the male department
head).  Thus, on that basis alone, Defendant would be entitled to
summary judgment.[25]

    Even absent Plaintiff's admissions, the evidence on record

_____

positions involve the supervision of substantially more
employees, demand substantial work experience in the relevant
field or require technical knowledge. *See* Rhoades, 2011 WL
1447766 at * 4 (opining that positions are not substantially
equal when one requires different or greater skills).  Thus, none
of the aforementioned positions are comparable to the Municipal
Clerk because they do not involve similar work.

    [24]  Besides her reliance on the salary matrix discussed in
footnote twenty-one, Plaintiff fails to discuss or cite any
evidence that the Construction Official and Municipal Assessor's
work was similar to hers.

    [25]  The Court notes that in August 2010, Defendant hired an
independent investigator to examine the alleged disparity in
wages between male and female department heads.  The investigator
concluded that Plaintiff's salary was comparable to other
Municipal Clerk's salaries and that the duties of the Municipal
Clerk were neither similar or equal to the work performed by any
of the male department heads. *See* Exhibit 41.  Plaintiff does not
submit any evidence to refute these findings.

confirms the dissimilarity among the work of the Municipal Clerk, Construction Official and Municipal Assessor. With respect to the Construction Official,[26] he must possess a very technical skill set. The licenses and certifications required for the job take substantially more time to obtain, and require vastly more experience and training than the certifications for the Municipal Clerk. For example, the Construction official must have considerable experience in code enforcement and the construction industry even before he or she may receive any licenses.[27] The Municipal Clerk, on the other hand, only needs to complete a certification program offered through Rutgers University, and can then be appointed with no prior experience. In addition to the different skill set required for each position, the additional supervisory duties of the Construction Official further differentiate the positions. The Construction Official is also Director of the Department of Community Services. Consequently,

---

[26]   Shortly after the Township Administrator developed the salary matrix Plaintiff relies upon, the Township assigned the Construction Official several additional duties that would impact the grade he was assigned. Thus, the Court's analysis of the similarity of work between Plaintiff and the Construction Official will include the additional duties he was assigned because any violation that occurred before the change in duties would be barred by the statute of limitations.

[27]   Before an individual may become a Construction Official, usually some combination of code enforcement and construction industry experience is mandatory. The independent investigator's report noted that this experience equates to a salary commensurate with the possession of a bachelor's degree.

five different departments report to him, making his managerial responsibilities more similar to the duties of the Chief Financial Officer.[28]  The Court, therefore, concludes that the positions of Construction Official and Municipal Clerk do not involve similar work.

The similarity between the work of the Municipal Assessor[29] and Municipal Clerk is a much closer question.  The differences, however, are still paramount.  The Municipal Assessor examines and assesses property, which requires substantial travel throughout the Township.  The Municipal Clerk, on the other hand, works in an office and is not required to travel.  Since the Municipal Assessor's main job is to assess property for taxing purposes, he must be acutely aware of the value of homes and assessment methodology.  The Municipal Clerk does not need to possess this type of knowledge.  Thus, after an examination of their duties, the Court concludes that the work of Municipal Assessor and Municipal Clerk are not similar.

### b. Affirmative Defenses

Assuming that the Municipal Assessor is a job similar to the Municipal Clerk, Defendant claims that any disparity in pay between their salaries was based upon factors other than

---

[28]  In fact, five properly licensed and certified sub-code officials report to the Construction Official.

[29]  Although not required for the position, Plaintiff believes the Municipal Assessor holds a bachelor's degree.

Plaintiff's gender.  According to Defendant, the Municipal
Assessor received a higher salary because of his approximate
thirty-eight-year length of service.  From his appointment in
1972 through the commencement of this lawsuit, the Municipal
Assessor received yearly raises between approximately $2,500.00
and $3,500.00.  New Jersey law mandates that municipal assessors
receive the same increases in salary "given to all other
municipal officers and employees." N.J.S.A. 40A:9-165.  Thus,
whenever a municipal employee received a raise, the Municipal
Assessor's salary, absent good cause, had to proportionally
increase.  Over the course of his tenure with Defendant, the
Municipal Assessor received yearly salary increases because other
employees of the Township received raises.[30]  Consequently, these
raises were not the result of gender discrimination, but rather
were reflective of the Municipal Assessor's long tenure.[31]  Thus,

---

[30]  The salary ordinances on the record clearly reflect that
the Municipal Assessor's yearly raises were proportional to the
yearly raises other Township employees received.  In fact, the
raises Mr. Nunnenkamp received as Municipal Clerk, and the raises
the Municipal Assessor received were almost identical.
Furthermore, throughout their shared tenure with the Township,
the Municipal Assessor's salary was always only a few thousand
dollars lower than the Municipal Clerk's salary.

[31]  The Court additionally notes the Municipal Assessor's
thirty years of experience provides further justification for his
salary. See e.g., Gaujacq, 601 F.3d at 575 (holding that a male
employee's receipt of salary higher than a comparable female's
did not violate the EPA when the salary was justified upon the
employee's greater experience); Balmer, 423 F.3d at 612 ("A wage
differential based on education or experience is a factor other
than sex for purposes of the Equal Pay Act."); Knadler, 253

the Court will enter summary judgment[32] in favor of Defendant
because the raises explain any compensation disparity and satisfy
Defendant's burden of production.[33]

### D.   Violation of Township Ordinance

Plaintiff contends she is entitled to the receipt of
overtime pursuant to Winslow Township Code § 52-6A & § 52-7
(hereinafter "Code").  The Code provides that Township employees
are entitled to overtime compensation for hours worked in excess
of their normally assigned workday hours.[34]  In 2006, Defendant
amended the Code to specifically exempt all department heads,
including Plaintiff, from the receipt overtime pay.[35]
Consequently, after 2006, she was not entitled to receive

---

F.App'x. at 664 (holding similarly).

[32]   The Court also enters summary judgment in favor of
Defendant with respect to Plaintiff's New Jersey Constitution and
Civil Rights Act claim, Count IV of her Complaint, because she
failed to provide any evidence that she was discriminated against
on the basis of her gender.

[33]   Plaintiff failed to provide any evidence that Defendant's
nondiscriminatory reason was merely a pretext for its actions.

[34]   There is no dispute that during some weeks Plaintiff
worked in excess of her normally assigned workday hours.

[35]   Plaintiff is not entitled to the receipt of overtime
pursuant to the New Jersey minimum wage law or the Fair Labor
Standards Act. See Dimiro v. Twp. of Montclair, 676 A.2d 627, 629
(N.J. Super. Ct. Law Div. 1996) (finding that former municipal
court administrator was a bona fide executive capacity within
purview of FLSA overtime exception requirement); McDowell v.
Cherry Hill Twp., No. 04-1350, 2005 WL 3132192, at * 6 (D.N.J.
Nov. 21, 2005) (holding similarly).

overtime.  After a review of the record, the Court concludes
Plaintiff failed to provide any evidence that Defendant owes her
unpaid overtime compensation.[36]  Neither did Plaintiff provide
any evidence that any male department heads continued to receive
overtime payment when she did not. *See* Doc 34, Exhibit 6, Dep.
Tr. 85 (Plaintiff stating that she believes the practice of
paying overtime wages stopped and that no Department head
currently receives overtime compensation).  The Court, therefore,
will enter summary judgment in favor of Defendant.[37]

    **E.   Reprisal**

Plaintiff asserts a retaliation claim in Count VI of her
Complaint.  She contends that in response to a letter from her
attorney seeking her unpaid overtime, the Township Administrator
issued a memorandum that stated Defendants would no longer pay
employees overtime compensation.  Several weeks later, Defendant
adopted a resolution formalizing the policy that Department Heads
were not eligible to receive overtime pay.  According to
Plaintiff, the memorandum and resolution were acts of retaliation
against her for making a claim of employment discrimination.

---

[36]  Although Plaintiff alleges in her Complaint that she
failed to receive overtime since 2003, she admitted during her
deposition that the payment of overtime to her ceased in 2007 or
2008.

[37]  As further justification for entering summary judgment,
the Court notes that the Code does not provide Plaintiff with a
private right of action.

Claims of retaliation under the NJLAD are analyzed under the well-established burden shifting framework of McDonnell Douglas. 411 U.S. at 803-05; *See* McKenna v. Pac. Rail Serv., 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD."); Grigoletti, 570 A.2d at 912 ("We have recognized a . . . need to harmonize our LAD with Title VII and have borrowed heavily from the federal experience to assure some reasonable degree of symmetry and uniformity."). Under that framework, a plaintiff must first establish a *prima facie* case by showing that: (1) she engaged in protected employee activity; (2) the employer took adverse action against her after, or contemporaneous with, her activity; and (3) a causal link exists between her activity and the employer's action against her. Muzslay v. City of Ocean City, 238 F.App'x. 785, 789 (3d Cir. 2007) (citing Abramson v. William Paterson Coll., 260 F.3d 265, 286 (3d Cir. 2001)). Should the plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 803. Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must show

by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. <u>Id.</u>

Here, assuming Plaintiff established a *prima facie* case of retaliation, her claim fails because Defendant articulated a legitimate nondiscriminatory reason for its actions.  The record indicates Defendant terminated its overtime policy for financial reasons. *See* <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997) ("The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason . . ." for the adverse action).  According to Ms. Metzner, the Township's Mayor, abuses in overtime and the necessity to "look[] at every penny" were the reasons behind the change in policy. *See* Doc. 28, Exhbit 4, Dep. Tr. 64-65 ("[D]epartment heads are the top paid people . . . . And that it was conveyed to us . . . that there had been an accumulation of significant comp time accrued" by these individuals "[a]nd this is now at an age were the governing bodies . . . are looking at every penny, and . . . how it is spending and being legitimately spent").  This nondiscriminatory reason is further bolstered by the broad applicability of the resolution.  Consequently, every department head was no longer eligible to receive overtime

compensation, Plaintiff was not singled out.[38]  It applied equally to all department heads and no exceptions were granted regarding eligibility for overtime.  The Court, therefore, will enter summary judgment in favor of Defendant.[39]

## IV. CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment [Doc. 28] will be granted, and Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. 34] will be denied.  An appropriate order will be entered.


Date:  June 29, 2011                          s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.

---

[38]  Nor was Plaintiff the only department head adversely affected.  By her own admission both the Chief of Police and Head of Public Works Department work significant overtime hours and, are no longer eligible to receive overtime pay.

[39]  Plaintiff failed to provide any evidence that Defendant's nondiscriminatory reason was merely a pretext for its actions.